IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00231-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

6. FABIAN GARCIA-LAZALDE,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Candyce Cline, Assistant United States Attorney for the District of Colorado, and the defendant, Fabian Garcia-Lazalde, personally and by counsel, Boston Stanton, Jr., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Plea of Guilty:**

The defendant agrees to:

(1)     plead guilty to Count 1 of the First Superseding Indictment charging a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), all in violation of 21 U.S.C. § 846 (Conspiracy to distribute and possess with intent to distribute: (1) 50 grams and more of methamphetamine (actual), a Schedule II controlled substance; and (2) a mixture and substance containing a detectable amount N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance);

COURT EXHIBIT 1

(2) waive certain appellate and collateral attack rights, as explained in detail below;

(3) agree not to contest forfeiture as more fully described below; etc.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence within the low-end to mid-point of the appropriately calculated guidelines range. The government further agrees to move to dismiss Counts 2, 3 and 4 of the First Superseding Indictment with prejudice, against this defendant only. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. Finally, the government agrees that it will not argue that any co-defendant conduct occurring after December 12, 2020 is attributable to the defendant under §1B1.3. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §3C1.1 and §3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG §3E1.1(a) and agrees to file a motion requesting that the defendant receive a one-level reduction for acceptance of responsibility pursuant to USSG §3E1.1(b).

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement,

the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction, 21 U.S.C. § 846 (21 U.S.C §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(C));

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 29; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by

the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

### D. Forfeiture of assets:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 924(d); Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461(c) whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time

frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 21 U.S.C. § 846 (Conspiracy to distribute and possess with intent to distribute: (1) 50 grams and more of methamphetamine (actual), a Schedule II controlled substance; and (2) a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and (b)(1)(C)) are as follows:

### Count One: 21 U.S.C. § 846[1]

*First*: two or more persons agreed to violate the federal drug laws;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy;

*Fourth*: there was interdependence among the members of the conspiracy; and

*Fifth*: the overall scope of the conspiracy involved at least: (1) 50 grams and more of methamphetamine (actual), a Schedule II controlled substance; and (2) a

---

[1] 10th Cir. Pattern Jury Instructions, Controlled Substances—Conspiracy (2.87) (2021).

mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

### III. STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the First Superseding Indictment is: not less than 10 years to no more than life imprisonment; not more than $10,000,000 fine or both imprisonment and a fine; not less than 5 years and not more than a life term of supervised release; and a $100 special assessment fee.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

### V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

On or about November 14, 2019, a confidential source (CS1) arranged the purchase of one pound of methamphetamine for $2,400 from Fabian Garcia-Lazalde. That evening, CS1 picked-up Garcia-Lazalde in Longmont, Colorado and they rode together to a parking lot in Thornton, Colorado, District of Colorado. Upon arrival to the parking lot, Garcia-Lazalde received a call indicating that the source-of-supply was in a white Chevy. Garcia-Lazalde confirmed with CS1 that CS1 had the money. Both CS1 and Garcia-Lazalde then entered the Emir Itzayan Quiroa Pacheco's white Chevrolet Traverse. Here, Garcia-Lazalde introduced CS1 to Quiroa Pacheco and Quiroa Pacheco distributed 446 grams +/- 1 gram of methamphetamine (mixture/substance), of which 437 grams +/- 27 grams was methamphetamine (actual) (Ex. 16) to CS1. The parties confirmed that future transactions would continue to be coordinated through Garcia-Lazalde. This transaction was recorded by a covert recording device on CS1.[2] CS1 was then told to exit the vehicle. Garcia-Lazalde stayed in Quiroa Pacheco's vehicle for a short time, then exited, and departed with CS1 in CS1's vehicle.

On or about December 2, 2020, CS1 arranged for the purchase of 100 fentanyl

---

[2] All recorded discussions involving the defendant were in Spanish and were subsequently translated to English.

pills for $550 through Garcia-Lazalde. Garcia-Lazalde informed CS1 that he had access to five pounds of methamphetamine and 20,000 to 30,000 fentanyl pills, but he did not have it personally. Late that afternoon, CS1 arrived at the same Thornton, CO parking lot. Garcia-Lazalde was already parked there in his white Chevrolet van and he continued to coordinate the transaction via phone with CS1. The white Chevrolet van was parked next to Quiroa Pacheco's vehicle, a gray Jeep Liberty. Upon Garcia-Lazalde's direction, CS1 got into the back passenger side of Quiroa Pacheco vehicle. Quiroa Pacheco was seated in the driver's seat and Garcia-Lazalde was seated in the passenger seat. CS1 and the defendant discussed the prices for fentanyl pills and pounds of methamphetamine. The defendant told CS1, "if someone dies, let us know so we can lay low." CS1 stated that the pills were for a female in Boulder. Quiroa Pacheco emphasized, "let us know especially if a student dies." Quiroa Pacheco then distributed 9.8 grams of blue fentanyl pills (Ex. 15) stamped "30M" to CS1. Garcia-Lazalde, Quiroa Pacheco, and CS1 agreed to conduct future transactions and CS1 departed. This transaction was recorded by a covert recording device on CS1.

On or about December 11, 2020, CS1 arranged for the purchase of one pound of methamphetamine for $3,500 and 100 fentanyl pills for $500 through Garcia-Lazalde. That evening, CS1 traveled to the same parking lot in Thornton, CO and received direction from Garcia-Lazalde via phone as to which vehicle to get into. (Garcia-Lazalde was not physically present at this deal but he coordinated the transaction with CS1 via phone.) CS1 entered the front passenger seat of Quiroa Pacheco's white Chevrolet Traverse. CS1 and the defendant discussed pricing for fentanyl pills and pounds of methamphetamine. Quiroa Pacheco provided CS1 with his cell phone

number, thereby providing CS1 with a direct line of communication to Quiroa Pacheco. Quiroa Pacheco told CS1 that his name was "Rayito." Quiroa Pacheco then distributed 10.124 grams of fentanyl (Ex. 18) and 443.6 grams +/- 0.2 grams of methamphetamine (mixture/substance), of which 439.1 grams +/- 26.8 grams was methamphetamine (actual) (Ex. 17) to CS1. Quiroa Pacheco and CS1 agreed to conduct future deals together. CS1 departed from his location and Quiroa Pacheco was followed back to 1728 S. Dearborn Way, Aurora, Colorado. This transaction was recorded by a covert recording device on CS1, which included CS1's discussions with Garcia-Lazalde.

Garcia-Lazalde admits that he entered into an agreement with co-defendant Quiroa Pacheco to distribute and possess with intent to distribute, methamphetamine and fentanyl. Garcia-Lazalde knew the essential objective of the conspiracy when he entered into it and his participation in the conspiracy was knowing and voluntary. Each of the participants in the conspiracy acted for their shared mutual benefit. Based on the quantities identified above, the overall scope of the conspiracy involved at least 50 grams and more of methamphetamine (actual) (a Schedule II controlled substance) and a mixture and substance containing a detectable amount of fentanyl (a Schedule II controlled substance). The parties agree that methamphetamine and fentanyl are controlled substances within the meaning of the law.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

a) Under §2D1.1(a)(5), the base offense level is **34**.

b) Given what the government knows at this time, the government agrees to recommend that the defendant meets the criteria set forth in subsection (2) – (5) of 18 U.S.C. § 3553(f) and §5C1.2(a) (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases). Accordingly, the facts known to the parties regarding the defendant's criminal history are correct, the government will file for a motion for **downward 2-level variance** pursuant to 18 U.S.C. § 3553(f). If such motion is filed, the defendant will be eligible to receive a sentence below the mandatory minimum sentence imposed by 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), in violation of 21 U.S.C. § 846.

c) The parties agree that the defendant is not entitled to a mitigating role adjustment under §3B1.2

d) The adjusted offense level is **32**.

e) The parties agree that the defendant should receive a **3-level downward** adjustment for acceptance of responsibility pursuant to §3E1.1. The resulting total offense level is **29**.

f) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in **criminal**

**history category II.**

g) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

h) The advisory guideline range resulting from these calculations is **97-121 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from **87 months (bottom of Category I) to 188 months (top of Category VI)**. The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

i) Pursuant to guideline §5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be **$30,000 to $10,000,000** plus applicable interest and penalties.

j) Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term must be at least **5 years, but not more than life.**

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any *18 U.S.C.* § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 5/19/22

_____
FABIAN GARCIA-LAZALDE   Spanish interpreter USCCI
Defendant

Date: 5/19/22

_____
BOSTON STANTON, JR.
Attorney for Defendant

Date: 5/27/22

_____
CANDYCE CLINE
Assistant U.S. Attorney